Scott W. Wellman, Bar No. 82897
swellman@w-wlaw.com
Chris A. Wellman, Bar No. 304700
cwellman@w-wlaw.com
**WELLMAN & WARREN LLP**
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
Tel: (949) 580-3737
Fax: (949) 580-3738

Attorneys for Plaintiffs Greg Birch
And David Doehring (and all others
similarly situated)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG BIRCH, an Individual; DAVID DOEHRING, an Individual; and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FAMILY FIRST LIFE, LLC, a Connecticut limited liability company; and SHAWN MEAIKE, an Individual;<br><br>Defendants. | Case No: '22CV0815 MMA NLS<br>Judge:<br>Courtroom:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATION OF CALIF. BUS. & PROF. CODE §17500**<br>2. **VIOLATION OF CALIF. BUS. & PROF. CODE §17200**<br>3. **VIOLATION OF CALIF. BUS. & PROF. CODE §16600**<br>4. **VIOLATION OF TEXAS BUS. & COM. CODE §17.46**<br>5. **BREACH OF ORAL CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

1

**COMPLAINT**

Plaintiffs Greg Birch and David Doehring, by their undersigned attorneys, for their Class Action Complaint ("Complaint") against Defendants Family First Life, LLC and Shawn Meaike allege as follows:

## SUBJECT-MATTER JURISDICTION

1. This Court has Subject-Matter Jurisdiction pursuant to 28 U.S.C. § 1332, in that all parties to this action are domiciled in different States, and the amount in controversy exceeds $75,000. Specifically, Birch and Doehring are individuals and reside in the States of Texas and California, respectively. Thus, Birch and Doehring are domiciled in Texas and California. Regarding FFL, it is incorporated in Connecticut and has its principal place of business there. Also, all of FFL's members are domiciled in Florida.

## THE PARTIES

2. Plaintiff Greg Birch ("Birch") is an individual residing in the State of Texas.

3. Plaintiff David Doehring ("Doehring") is an individual residing in the State of California.

4. Defendant Family First Life, LLC ("FFL") is a Connecticut limited liability company with its principal place of business located at 80 Norwich New London Turnpike, Uncasville, Connecticut 06382.

5. Defendant Shawn Meaike ("Meaike") is an individual residing in the State of Florida.

## STATEMENT OF FACTS

**FFL's IMO**

6. FFL is in the business of distributing life insurance. The President of FFL is Meaike.

7. To distribute life insurance products to the public, FFL uses a business model known as an "Insurance Marketing Organization" ("IMO") that is well-

2

established within the life insurance industry.

8. Under this model, IMOs contract directly with carriers who then provide different variations of life insurance products that are sold through the IMO.

9. The IMO then employs independent contractors commonly known as "Agents" who market and distribute the carrier's insurance products to consumers.

**The Commission Structure**

10. When enrolling with an IMO, Agents can recruit other Agents to become part of their selling organization at the IMO. The selling organization beneath a particular Agent is commonly referred as that Agent's "downline" or "downline organization."

11. After enrolling as an Agent, the individual is eligible to earn commissions through the IMO's "Compensation Plan" for any insurance product he/she sells.[1] Also, the Agent earns commissions on insurance products sold by those Agents in his/her downline.

**Contracting with an IMO and Carrier**

12. To become an Agent, an individual is generally required to contract with the IMO.

13. Furthermore, to be authorized to market and sell the carrier's product through the IMO, Agents are also required to directly contract with the carriers (the "Carrier Contracts").

14. Typically, an IMO maintains contracts with a variety of carriers that sell different types of insurance products. This is because often an Agent is not interested in selling a particular carrier's product, either because those products are not desired in the Agent's territory, or because the Agent does not believe in the products altogether. Thus, by maintaining contracts with several different carriers, IMOs give their Agents the option to choose between carriers that better serve their selling needs. Indeed, according

---

[1] Under the IMO model, commissions are paid out to Agent after the IMO first deducts its commission from the sale of the carrier's products.

3

**COMPLAINT**

to FFL's own website, FFL "parterner[s] with top Insurance carriers, so [Agents] are truly able to get the product that best fits [their] situation."

**FFL False Representations**

15. While most IMOs require their Agents to contract with them directly, FFL stands apart from other IMOs in the industry. This is because, unlike other IMOs, FFL does not require its Agents to directly contract with its company. Instead, to make itself more attractive and competitive, FFL represents that its Agents are independent contractors, and because of their status, they shouldn't be obligated to enter into a contract with any IMO including FFL. Instead, FFL represents that its Agents are free to come and go to another IMO whenever the Agent so chooses without restrictions.

16. Example of these types of representations are contained on FFL's website and are made on YouTube by FFL's president, Meaike:

- **FFL Website:** "As an independent contractor, **we don't believe there is any reason to sign a contract with an IMO**. The only contracts you should sign are your carrier contracts in order to sell their products."
- **YouTube:** "So at Family First Life we tell people, 'Come work with us. If it doesn't work out with us, we stand by what we do, what we put together. **But we don't need to bully you with a contract in case you want to do something else with your life**.' So, [Family First Life] . . . it's just an option, but it's an option that **doesn't place an independent contractor under some contract**, which to me is absolutely ludicrous."[2]
- **YouTube:** "We don't put you under contract. Your contract is with the carrier . . . But you're not under contract with us. **You can come and go as you please, go work wherever you want. This idea that we are going to try and hold people captive or not let them work**

---
[2] https://www.youtube.com/watch?v=OObCLRaZjFI

**somewhere else, or bully them around, that seems weird**."[3]

17. In addition, FFL also publicizes that its Agents are "vested" day one, meaning that the Agent owns his/her book of business and will continue to earn commissions on renewals.[4] Examples of these representations are made on FFL's website and made by Meaike on YouTube:

- **FFL Website:** "Most companies will vest you after 5 to 10 years, there are also many that don't offer renewals at all. At FFL you're vested 100% day 1 which means your business is truly yours."
- **YouTube:** "So you're vested day one. You don't have to wait 5, 7, 10 years and go like, 'well you have to remain with us, or you won't be able to keep your renewals.' You start today, you write policies that have renewals that are built into them, and in a year from now they renew, then you get paid. Your vested day one."

18. However, despite these representations, FFL does absolutely the opposite of what it promotes. For instance, the Carrier Contract include language that if the Agent decides to leave to another IMO, the Agent can immediately transfer the contract to the new IMO so long as the Agent obtains a release from the former IMO (the "Release"). Otherwise, the Agent would either need to self-terminate from the former IMO and wait six (6) months before the contract is eligible for transfer, or, alternatively, perform no business with the carrier for six (6) months before the contract is eligible for transfer.

19. Because of the promises made by FFL that it doesn't "believe there is any reason to sign a contract with an IMO," and that it won't "bully you with a contract in

---

[3] https://www.youtube.com/watch?app=desktop&v=_vKyMAV0pls

[4] A renewal refers to when a customer renews a policy. Each time a renewal takes place, the Agent who sold the policy receives a commission.

5

**COMPLAINT**

case you want to do something else with your life," Agents are led to believe that if they choose to enroll with FFL, they have the option to leave for another IMO without any restriction.

20. However, the reality is that when an Agent decides to move to another IMO, FFL restrains the Agent by refusing to sign the Release and instead forces the departing Agent to sign a contract before any Release can be obtained (the "Restricting Contract"). What's worse is the Restricting Contract includes onerous non-compete and non-disclosure clauses that eliminates an Agent's ability to transfer his/her book of business elsewhere.

21. For example, the Restricting Contract states that:
"for the two (2) year period following the date of this Agreement, the Agent will not, either directly or indirectly, on behalf of himself or herself or anyone else, induce or attempt to induce any customer to whom the Agent previously sold a life insurance or annuity product through FFL to cancel or not renew any such life insurance or annuity product . . ."

22. The Restricting Contract also states that:
"the Agent will not **at any time** . . . use . . . confidential information **in any manner** (it being agreed that **all information concerning the business of FFL and/or its agents, customers,** carriers, lead vendors, lead system, CRM system, and compensation **shall be considered . . . confidential information of FFL**) . . ."

23. These provisions, when read together, removes an Agent from the marketplace because the Agent is restricted from using the contact information of his/her customers to purchase products while at a different IMO. Furthermore, the Agent is restricted from using the contact information of other Agents in his/her downline to

1 | discuss business regarding another IMO.

2 | 24. FFL's false representations that its Agents are free to leave for another IMO without restriction has caused significant damage to departing Agents.

**Consequences of FFL's False Representations**

25. FFL's refusal to consent to a Release puts the Agent in a precarious position. Either the Agent is forced to sign the Restricting Contract so he/she can continue doing business with his/her preferred carriers, but with no ability to contact his/her book of business or downline Agents, or, alternatively, the carrier is forced to stay with FFL so he/she can continue doing business with the preferred carriers with no restrictions whatsoever. If either choice is unacceptable, the Agent is then left with no option but to wait six (6) months and perform no business with the carrier before he/she can again contract with the carrier with another IMO.

26. Given the onerous language of the provisions contained in the Restricting Contract, and given that Agents are misled in believing they can "come and go" from FFL without restrictions, some Agents ultimately refuse to sign the Restricting Contract when the agreement is imposed upon them. Because of this, Agents are then forced to wait six (6) months before they can contract again with their preferred carriers at a different IMO.

27. FFL's practice is considered an unreasonable restraint of trade, which has injured Agents and the entire insurance marketplace.

**False Representation Regarding Leads**

28. In addition to the representation that Agents are free to leave FFL without any restrictions, FFL also markets itself as a superior IMO over others because it has access to "exclusive," "fresh" leads that are "newly generated" and have "never been used." Leads, according to FFL, are potential clients who are seeking insurance products. Thus, FFL tells its Agents that its leads are of a high quality and with these leads, Agents can solicit new customers that need life insurance or other insurance products.

29. FFL sells these leads to its Agents at a premium price. Based on the representations, Agents will spend hundreds, if not thousands of dollars purchasing the leads, believing them to be people in dire need of insurance who have yet to been contacted. On information and belief, FFL earns approximately three (3) to four (4) million dollars a week on selling the leads.

30. However, the representations made by FFL are false. In truth, the leads are not newly generated but have been recycled several times over. Even worse, the leads are not leads at all because the list is comprised of people who are not even looking for insurance. In fact, when Agents call these so-called "fresh" leads, the alleged prospective customer would often ask the Agent to not call anymore because they were already called by another FFL agent and are not looking for insurance.

**Birch and Doehring**

31. Birch and Doehring enrolled with FFL in November 2018 and May 2021, respectively. Plaintiffs enrolled with FFL and continued to do business with the company based on FFL's representation that it did not require a contract and that Plaintiffs were able to come and go to another IMO without any restriction. These representations were made by FFL on its website and by Meaike on YouTube videos at the time Plaintiffs each enrolled with the company and throughout their tenure with FFL.

32. Relying on these representations, Plaintiffs entered into contracts with their preferred carriers and proceeded to build a successful downline organization and book of business. At all times Plaintiffs were under the belief that if they chose to leave to another IMO, FFL would sign the Release, thereby allowing Plaintiffs to transfer their preferred carriers to a different IMO.

33. While at FFL, Plaintiffs also purchased leads from the company based on FFL's representation that such leads were "exclusive," "fresh," "newly generated," and have "never been used." These representations induced Plaintiffs into believing they were receiving top-quality leads because such customers needed insurance products and have yet to be contacted regarding those products. FFL's representations about the leads

were made to Plaintiffs in phone conferences, at company events, and on YouTube videos when Plaintiffs rolled with FFL and throughout their tenure with the company. The representations regarding the leads were made by many people associated with FFL, including, but not limited to Meaike and Andrew Taylor.

34. In or around August 2021, Plaintiffs made the decision to terminate their relationship with FFL and move to another IMO. But because Plaintiffs wanted to continue servicing their customers with their preferred carriers, Plaintiffs tendered the Release to FFL with the expectation that such Release would be signed in accordance with the FFL's promises mentioned above.

35. However, rather than signing the Release and abiding by its promises, FFL imposed the Restricting Contract upon Plaintiffs, informing them that FFL will not sign the Release unless they executed the Restricting Contract first.

36. Plaintiffs refused to sign the Restricting Contract, believing it to be totally contrary to what was represented to them when they worked with FFL. Therefore, Plaintiffs were forced to wait the six-month period mentioned above and could not do any business with their preferred carriers.

37. Regarding the leads, Plaintiffs later learned the leads were not "fresh" as represented. Instead, they were recycled many times over and included names of people who were not even interested in looking for insurance products. The leads were of inferior quality. Thus, Plaintiffs were induced into paying a premium price for the leads when, in fact, they were not of the quality as represented. Accordingly, Plaintiffs have been damaged.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this action as a Class Action pursuant to Rule 23(a) and (b)(2) and (3) of the Federal Rules of Civil Procedure.

39. Plaintiffs seek certification of a Class as defined as follows:

    a. **Nationwide Class**

- All persons in the United States who enrolled with FFL and who purchased leads from FFL.

b. **California Class:**
- All persons in California who enrolled with FFL as an Agent and who submitted a Release to be signed by FFL but were denied.
- All persons in California who enrolled with FFL as an Agent and who purchased leads from FFL.

c. **Texas Class:**
- All persons in Texas who enrolled with FFL as an Agent and who submitted a Release to be signed by FFL but were denied.
- All persons in Texas who enrolled with FFL as an Agent and who purchased leads from FFL.

40. Excluded from the Classes are Defendants, their affiliates, employees, officers and directors, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the class definition if discovery and/or further investigation reveals that they should be expanded or otherwise modified.

41. **Numerosity**: The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at the present time, Plaintiffs are informed and believe that FFL had more than 15,000 Agents to date.

42. **Typicality**: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all the Class members sustained damage which arose out of Defendants' wrongful conduct complained herein. Plaintiffs and the Class members were injured in the same manner by Defendants' uniform course of conduct alleged herein. Plaintiffs and all Class members have the same claims against Defendants relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class members. Plaintiffs and all Class

members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct.

43. **Adequacy**: Plaintiffs are representatives who will fully and adequately protect the interests of the Class members. Plaintiffs have retained counsel who are experienced and competent in both Class Action and IMO litigation.

44. **Superiority**: A Class Action would be superior to all other available methods for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members for the Class individually to redress effectively the wrongs done to them by Defendants. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complete legal and factual issues of the case. By contrast, the Class Action device presents far fewer management difficulties, and provides the benefits of a single adjudication, an economy of scale, and comprehensive supervision by a single court. On information and belief, members of the Class can be readily identified and notified. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a Class Action.

45. **Existence/Predominance of Common Questions of Fact and Law**:

Questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members in that Defendants have acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

  a. Whether the leads sold by FFL were not of the quality as represented, and if not, whether recession/restitution should be afforded to the Agents

who purchased such leads?

b. Whether Agents were unreasonably restrained from competing because FFL's refusal to sign the Release.

# COUNT 1

## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500

### (By Doehring and all California Class members against all Defendants)

46. Doehring and all California Class members incorporate all preceding paragraphs as though fully set forth here.

47. According to Cal. Bus. & Prof. Code § 17500, "[it] is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by

**COMPLAINT**

both that imprisonment and fine."

48. Defendants have and continue to violate Section 17500 by, among other things, making false and/or misleading statements to the public to entice them to enroll with FFL as an Agent. As mentioned above, Defendants publicized that its Agents were free to come and go from FFL to another IMO without any contract or restrictions. However, these representations were false. In reality, Agents are not free to leave FFL without restrictions, but instead are required to sign a Restricting Contract if that Agent desires to continue doing business with his/her preferred carriers elsewhere. Otherwise, the Agent is forced to wait six (6) months and perform no business with the carrier whatsoever.

49. Furthermore, Defendants have and continue to violate Section 17500 by falsely representing, among others, that its leads were "exclusive," "fresh," "newly generated," and have "never been used." These representations were untrue and misleading because the leads were actually recycled many times over and in some instances were not leads at all.

50. Defendants either knew or should have known that its representations were false.

51. Defendants' actions have been ongoing and continue to occur to this day.

52. As a result of such representations, Doehring and all California Class members have been harmed in an amount to be determined at trial. If Defendants' conduct is allowed to continue without a permanent injunction, additional Agents will be harmed.

## COUNT 2
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200**
**(By Doehring and all California Class members against all Defendants)**

53. Doehring and all California Class members incorporate all preceding paragraphs as though fully set forth here.

54. Pursuant to Cal. Bus. & Prof. Code § 17200, "unfair competition shall mean

and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) . . ."

55. Defendants' actions described above constitutes a violation of Section 17200 because they were unlawful, fraudulent, and unfair.

56. Defendants' actions are unlawful because they violate 15 U.S.C. § 1, Bus. & Prof. Code § 17500, Bus. & Prof. Code § 16600, and Cal. Ins. Code § 790.03(b).

57. Defendants' actions described above are fraudulent and unfair, as they are intended to unreasonably restrain trade and harm departing Agents from working in the insurance industry for a period of six (6) months despite Defendants' representations that its Agents are free to come and go from FFL without restrictions. Furthermore, Defendants' actions in selling leads are fraudulent and unfair because they were represented to be of superior quality when in fact they were not.

58. Defendants' actions have been ongoing and continue to occur to this day.

59. As a result of Defendants' actions, Doehring and all California Class members have been injured. If Defendants' conduct is allowed to continue without a permanent injunction, additional Agents will continue to be harmed.

## COUNT 3
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 16600
**(By Doehring and all California Class members against FFL)**

60. Doehring and all California Class members incorporate all preceding paragraphs as though fully set forth here.

61. According to Cal. Bus. & Prof. Code § 16600, "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

62. FFL entered the Restricting Contract with its Agents.

63. As stated above, the Restricting Contract ultimately restrains FFL's departing Agents from engaging in a "lawful profession, trade, or business . . ."

14

**COMPLAINT**

64. As a result, the Restricting Contract is deemed void as a matter of law.

65. Doehring and all California Class members that entered the Restricting Contract were harmed as a result of FFL's actions.

## COUNT 4

## VIOLATION OF TEXAS BUSINESS & COMMERCE CODE § 17.46

**(By Birch and all Texas Class members against Defendants)**

66. Birch and all Texas Class members incorporate all preceding paragraphs as though fully set forth here.

67. According to Texas Bus. & Com. Code § 17.46, "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful . . ." The term "false, misleading, or deceptive acts or practices" includes, but is not limited to the following: "representing that goods or services have . . . characteristics . . . which they do not have . . ."; "representing that goods are original or new if they are . . . reconditioned, reclaimed, used, or secondhand"; "representing that goods or services are of a particular standard, quality, or grade . . . if they are of another;" and "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

68. Defendants committed false, misleading and deceptive acts by misrepresenting the quality of the leads to its Agents in order to obtain a premium price. Furthermore, Defendants violated Section 17.46 by falsely representing to prospective Agents that FFL does not require contracts and does not restrict its Agents from moving from one IMO to another when, in reality, it does conduct such behavior.

69. As a result of Defendants' actions, Birch and all Texas Class members have been injured. If Defendants' conduct is allowed to continue without a permanent injunction, additional Agents will continue to be harmed

# COUNT 5

## BREACH OF ORAL CONTRACT

**(By Plaintiffs and all Class members against FFL)**

70. Plaintiffs and all Class members incorporate by reference all preceding paragraphs as though fully set forth here.

71. Plaintiffs and all Class members entered into an oral agreement with FFL relating to the purchase of leads. According to the terms of the oral agreement, FFL promised to provide leads that were described as being "exclusive," "fresh" leads that were "newly generated" and have "never been used." In exchange, Plaintiff and all Class members agreed to pay a premium price for the leads.

72. Plaintiffs and all Class members performed under the contract by paying the sums mentioned above.

73. FFL breached the agreement by providing Plaintiffs and all Class members leads that were recycled and used many times over. In fact, the leads were not leads at all because in some cases, the potential customer was not even looking for insurance.

74. FFL was not excused from performing under the contract.

75. As a result of the breach, Plaintiffs and all Class members were damaged. Plaintiffs and all Class members seek recission of the agreements they entered into and thus seek reimbursement of any payments made to FFL for the leads.

## PRAYER FOR RELIEF

WHEREFORE, Birch and Doehring and all Class members pray for judgment as follows:

a. That the Court enter judgment against Defendants in favor of Plaintiffs and all Class members in an amount to be determined at trial;

b. That all maximum penalties and statutory fines be assessed against Defendants in accordance with Bus. & Prof. Code §§ 17200, 17500, 16600, and Texas Bus. & Com. Code § 17.46;

  c. For injunctive relief permanently restraining Defendants from: 1) further making false representations regarding an Agent's ability to come and go from FFL to another IMO without restrictions; 2) further making false representations regarding the quality of FFL's leads; and 3) imposing the Restricting Contract on departing Agents when they seek a Release from FFL.

  d. That Doehring and all California Class members be entitled to a recovery of attorney fees and costs pursuant to C.C.P. § 1021.5;

  e. That Birch and all Texas Class members be entitled to a recovery of attorney fees and costs pursuant to Texas Bus. & Com. Code § 17.46(d).

  f. For recession and restitution of any funds paid to FFL for the leads;

  g. For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Birch and Doehring and all Class members demand a jury trial on all issues so triable.

Dated: June 3, 2022

           **WELLMAN & WARREN LLP**

           By:<u>/s/Chris Wellman</u>
           Scott W. Wellman
           Chris A. Wellman
           Attorneys for Plaintiffs Greg Birch
           And David Doehring (and all others
           similarly situated)

**COMPLAINT**