1 │ Scott W. Wellman, Bar No. 82897
2 │ swellman@w-wlaw.com
  │ Chris A. Wellman, Bar No. 304700
3 │ cwellman@w-wlaw.com
  │ **WELLMAN & WARREN LLP**
4 │ 24411 Ridge Route, Suite 200
  │ Laguna Hills, CA 92653
5 │ Tel: (949) 580-3737
  │ Fax: (949) 580-3738
6 │
7 │ Attorneys for Plaintiffs
  │ Michael Borish, Kevin Vega, Ramon Fazah
8 │ (and all others similarly situated)

9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

10

11

MICHAEL BORISH, an individual;
KEVIN VEGA, an individual; RAMON
FAZAH; an individual; and on behalf of
all others similarly situated,

            Plaintiffs,

      vs.

FAMILY FIRST LIFE, LLC, a
Connecticut limited liability company

            Defendant.

Case No: 3:22-CV-00815
Judge: Michael M. Anello
Courtroom: 3C

**CLASS ACTION THIRD**
**AMENDED COMPLAINT FOR:**

1. **VIOLATION OF CALIF. BUS. &**
   **PROF. CODE §17500**
2. **VIOLATION OF CALIF. BUS. &**
   **PROF. CODE §17200**
3. **VIOLATION OF CALIF. PENAL**
   **CODE §496**
4. **VIOLATION OF TEXAS BUS. &**
   **COM. CODE §17.46**
5. **VIOLATION OF FLORIDA**
   **STATUTE §501.204**
6. **VIOLATION OF FLORIDA**
   **STATUTE §817.06**
7. **BREACH OF WRITTEN**
   **CONTRACT**
8. **BREACH OF ORAL**

1

**THIRD AMENDED COMPLAINT**

**CONTRACT**

**[DEMAND FOR JURY TRIAL]**

Complaint field on: June 3, 2022

   Plaintiffs Michael Borish, Kevin Vega and Ramon Fazah by their undersigned attorneys, for their Class Action Third Amended Complaint ("TAC") against Defendant Family First Life, LLC allege as follows:

## SUBJECT-MATTER JURISDICTION

   1.     This Court has subject-matter jurisdiction pursuant to diversity jurisdiction set forth in 28 U.S.C. §1332. At least one member of the class is domiciled in a different State than any defendant in this action, and the amount in controversy exceeds the statutory minimum of $75,000. Plaintiff Michael Borish resides in Florida, Plaintiff Kevin Vega resides in Texas, and Plaintiff Ramon Fazah resides in California. Defendant Family First Life, LLC, is incorporated in Connecticut, and has its principal place of business there. Furthermore, Family First Life, LLC's sole member resides in Connecticut. Accordingly, Family First Life, LLC is domiciled in Connecticut.

## PERSONAL JURISDICTION

   2.     This Court has personal jurisdiction over Family First Life, LLC, because according to its website, Family First Life, LLC maintains fourteen (14) offices within the state of California:

//

//

//

2

**THIRD AMENDED COMPLAINT**



3.     Moreover, authorized representatives of Family First Life, LLC Paul McClain, Shawn Meaike, and Christina Barkley, as well as several FFL websites, made representations to California residents, that form the basis of the claims included herein.

4.     Finally, Family First Life, LLC has held and continues to hold several corporate events in California, which are intended to promote Family First Life, LLC's business and its leads to the public, which include California residents.

## **THE PARTIES**

5.     Plaintiff Michael Borish ("Borish") is an individual residing in the State of Florida.

6.     Plaintiff Kevin Vega ("Vega") is an individual residing in the State of Texas

7.     Plaintiff Ramon Fazah ("Fazah") is an individual residing in the State of California.

8.     Defendant Family First Life, LLC ("FFL") is a Connecticut limited liability

3

**THIRD AMENDED COMPLAINT**

company with its principal place of business located at 80 Norwich New London Turnpike, Uncasville, Connecticut 06832.

## STATEMENT OF FACTS

### FFL's IMO

9.     FFL is a life insurance distributor that follows a business model known as an "Insurance Marketing Organization" ("IMO").

10.    Under this model, IMOs contract directly with insurance carriers, who provide IMOs with different variations of life insurance products.

11.    The IMO employs a network of independent contractors known as "agents" who market and distribute the carrier's insurance products to the public.

### The Commission Structure

12.     When enrolling with an IMO, an agent can recruit other agents to become part of their selling organization at the IMO. The selling organization beneath a particular agent is commonly referred to as that agent's "downline" or "downline organization," while those agent's superiors are referred to as that agent's "upline."

13.    Agents are then remunerated pursuant to a compensation plan that provides for a structured series of commissions based upon their sales volume, and the sales of their downline.

### FFL's Marketing and Selling of Leads

14.    An insurance lead is a document that includes the name and contact details of a prospective customer who has recently expressed interest in purchasing insurance. Leads are among the most valuable resources an insurance agent has, as quality leads allow the agent to increase their customer base by filling the orders of persons who are actively looking to purchase insurance, as opposed to soliciting individuals at random who are less likely to be looking for insurance.

4

**THIRD AMENDED COMPLAINT**

15.     The more time that passes between the customer inputting his or her information, and the agent gaining access to the contact details, the less valuable the lead is. The same is true for leads that are sold to multiple agents, as the likelihood the potential customer will purchase insurance decreases after the first time an agent contacts him or her.

16.     FFL markets itself as a superior IMO precisely for this reason. FFL advertises it has access to, and provides its agents with "exclusive," "instant," "fresh" leads that are "newly generated" and have "never been used."

17.     FFL characterizes and represents to its agents that the leads are of high quality because they are comprised of consumers in need of insurance products that have not yet been solicited by other insurance agents. Thus, agents purchasing these leads are led to believe that they are the first person contacting the consumer who has already requested insurance products, such as those sold by FFL.

18.     FFL sells the leads exclusively through FFL's customer relationship management system ("CRM"). In the system, FFL's leads are advertised, among other things, as being "exclusive," "instant," "Fresh" and/or "newly generated." After reviewing the description, an agent can select the type of leads he or she wants[1], and submit payment for the number of leads purchased. On information and belief, the CRM has been, and continues to be operational since the inception of FFL.

19.     FFL sells these "exclusive," "instant," and "newly generated" leads to its Agents at a premium price, and often offers promotional discounts on leads to induce agents to purchase larger quantities or packages of leads.

20.     Based on FFL's representation, agents spend hundreds, if not thousands, of dollars purchasing these leads, understanding the leads to comprise of people in dire need of insurance who have not yet been contacted. On information and belief, FFL

---

[1] On information and belief, FFL markets and sells different types of leads on the CRM. These include internet leads, direct mail leads, and social media leads.

**THIRD AMENDED COMPLAINT**

earns approximately three (3) to four (4) million dollars a week in lead sales.

**False Representation of Leads**

21.    The representations made by FFL as to the quality of the leads are blatantly false. In reality, the leads sold by FFL to its agents are not "newly generated" nor are they "instant." The leads are not "exclusive," "fresh," nor have they "never been used."

22.    Rather, the leads have been recycled several times. FFL sells the same customer information and contact details to multiple agents, despite assurances to the contrary.  Often, the same leads are resold to agents within the same downline or crossline, which leads to diminished compensation to the equivalent upline.

23.    In addition, more often than not, FFL's leads contain phone numbers that are out of service, and email addresses that are invalid, rendering the leads completely worthless.

24.    When the agent does happen to gain access to valid contact information from the so-called "instant" leads, the alleged prospective customer would often request the agent not to contact them, because they had already been contacted by another FFL Agent, and had no interest in purchasing insurance.

25.    Even worse, the leads are not viable leads at all—the list is comprised of people who are not looking for insurance, or expressed interest in purchasing insurance years ago, and no longer need to do so.

**The FFL Webpages**

26.    FFL utilizes several platforms to encourage agents to purchase leads. One such platform is through the various FFL websites. [2]

27.    The FFL webpage www.familyfirstlife.com contains a section entitled "THE TRUTH," which includes a subsection labeled "LEADS."  Under this section,

---

[2] FFL has several operative websites for different regions and purposes: www.familyfirstlife.com is the national website; www.joinfflwestcoast.com targets agents in and around California; and www.familyfirstliferelentless.com is the Bakersfield, California office's website.

**THIRD AMENDED COMPLAINT**

1  FFL states:



9      28.    Additionally, the same website has a separate section that advertises
10  upcoming FFL events, including many events in California. For example, on June 12-14,
11  2022, FFL held events in Los Angeles and Tustin, California. FFL CEO and President
12  Shawn Meaike ("Meaike") spoke publicly at these events to a crow of California
13  residents, stressing that FFL agents needed to purchase the "superior" leads from FFL.
14  On information and belief, FFL hosts events in California on a continuous basis.

15      29.    FFL also maintains the URL www.joinfflwestcoast.com, which lists its
16  address at 16209 Kamana Rd., Apple Valley, California. The homepage asserts the
17  following:

## The 5 Reasons Why This Is The Best Place For You:

**1. HIGHEST COMPENSATION:** Highest compensation in the industry. Starting 90%, and ability to earn up to 145%. PLUS Bonuses on top of that.

**2. TOP TRAINING:** Best Training in the industry from active top producers teaching what is making them so successful. We will help you become the smartest agent in the field.

**3. FRESH LEADS:** Direct Mail Mortgage, Internet, Final Expense, Medicare, and Annuity leads

24      30.    An additional website operated by FFL is
25  www.familyfirstliferelentless.com, which serves as the website for the FFL office
26  located at 208 Oak Street, Bakersfield, California. The homepage contains a hyperlink

7

**THIRD AMENDED COMPLAINT**

labeled "leads," when clicked, the subsequent webpage lists various lead packages available for purchase including "EXCLUSIVE, PREMIUM FINAL EXPENSE LEADS…EXCLUSIVE AND REAL TIME…GUARANTEED IN YOUR AREA…"

31.    The website further states "you will never lose money on leads" and "[t]he secret to ongoing success at FFL is simply by consistently buying leads." A true and correct copy of the screenshot of the relevant pages is attached hereto as **Exhibit A.**

**FFL's YouTube Channel**

32.    FFL also maintains a YouTube channel entitled "FFL WEST COAST," which hosts four series of podcasts created for FFL agents residing in and around California. New podcasts are released on a weekly basis. On information and belief, each podcast shared on the FFL WEST COAST YouTube channel is recorded in and broadcasted from California.

33.    One such podcast is "Morning Wakeup," hosted by Paul McClain ("McClain"). Per the FFL website, McClain is an FFL Vice President residing in Apple Valley, California.

34.    To date, there are fifty-two (52) 'Morning Mindset' podcast episodes. Each contains a description below the video stating "The 5 reasons why [FFL] is the best place for you" number three out of five states: "FRESH LEADS." A true and correct copy of the screenshot of the description below the videos is attached hereto as **Exhibit B**.

35.    One example from the FFL WEST COAST YouTube channel is a video entitled "The Rogue IMO (2022)," which also appears on the FFL West Coast homepage. The video is narrated by FFL Vice President Steven Yee ("Yee") and was posted to the FFL WEST COAST channel on March 15, 2022. There, Yee states, in part "Most places that have leads, sell you recycled leads that have been given to 10, 15, 20 other agents…At Family First Life, you don't have to do that, we work with 15-20 lead

**THIRD AMENDED COMPLAINT**

vendors that give us exclusive programs to help you generate business." A true and correct copy of the post is attached hereto as **Exhibit C**.

36.     FFL has an additional YouTube channel title "Grow Family First Life-FFL." On March 24, 2021, the video "Complete Leads Breakdown FFL" was posted, in which FFL Executive Board Member Grady Polcyn ("Polcyn") states, in part "leads are the key to your entire income" "the goodness about this business is [it]...allows prospects, who want to buy your product, fly into your email, there's nothing better than that!" A true and correct copy of the post is attached hereto as **Exhibit D**.

**Emails**

37.     FFL continuously sends emails to agents touting the importance of purchasing leads.

38.     On July 16, 2021, Christina Barkley ("Barkley), the FFL hiring manager, sent out an email to Vega and other agents stating, in part "Insurance sales offer a variety of benefits that other sales positions can't such as job security as it's a recession proof industry, ability to work off leads vs cold networking, quick turnaround for income..." A true and correct copy of the email described is attached hereto as **Exhibit E**.

39.     Similarly, on July 6, 2021, Barkley sent out an email to numerous agents, including Vega, stating "We are here to change the existing state to; the highest commission for the agent, low overrides for the agency, warm exclusive leads...If you're not afraid of progress, of growth, and of success than reach out and chat with us." A true and correct copy of the email described is attached hereto as **Exhibit F**.

40.     An additional example of emails touting the quality and timeliness of the leads was sent from the FFL email address hiring@familyfirstlife1.com on November 13, 2021, that included the following:

9

## The Plaintiffs

41. Plaintiffs enrolled with FFL on the following dates:

    a.  Ramon Fazah enrolled on or about April 2020.

    b.  Kevin Vega enrolled on or about March/April 2021.

    c.  Michael Borish enrolled on or about November 2020.

42.   While at FFL, Plaintiffs purchased leads from the company based on FFL's representations that such leads were "exclusive," "instant," "newly generated," and have "never been used." Additionally, Plaintiffs were assured via various FFL websites, and through FFL representatives, that the leads were "fresh," meaning they consisted of customers who were actively looking to purchase insurance products.

43.   The aforementioned representations induced Plaintiffs to purchase the leads because Plaintiffs believed they were receiving high-quality leads for customers who needed insurance products, and that these individuals had yet to be contacted by an Agent. FFL made these representations to Plaintiffs in phone conferences, at company events, on YouTube videos when Plaintiffs enrolled with FFL, and on numerous occasions throughout their tenure with the company, as set forth in detail above. The representations regarding the leads were made by officers and representatives of FFL, including, but not limited to, Meaike, Yee, Polcyn, McClain, and Barkley.

10

**THIRD AMENDED COMPLAINT**

44. After purchasing the leads, Plaintiffs learned that the leads were not as represented. The leads were recycled several times over by other FFL agents, contained invalid contact information, and included names of individuals not at all interested in purchasing insurance products. Plaintiffs were induced into paying a premium price for the leads, when, in fact, the leads were of inferior quality. Accordingly, Plaintiffs have been damaged in an amount to be determined at trial.

## CLASS ACTION ALLEGATIONS

45. Plaintiffs bring this action as a Class Action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(c) of the Federal Rules of Civil Procedure.

46. Plaintiffs seek certification of a Class defined as follows:

a. **Nationwide Class**

- All persons in the United States who enrolled with FFL and who purchased leads from FFL that were marketed as "instant," "fresh," "never been used," "exclusive," "new" and/or "newly generated."

b. **California Class**

- All persons in California who enrolled with FFL as an Agent and who purchased leads from FFL that were marketed as "instant," "fresh," "never been used," "exclusive," "new" and/or "newly generated."

c. **Texas Class**

- All persons in California who enrolled with FFL as an Agent and who purchased leads from FFL that were marketed as "instant," "fresh," "never been used," "exclusive," "new" and/or "newly generated."

d. **Florida Class**

- All persons in Florida who enrolled with FFL as an Agent and who

11

**THIRD AMENDED COMPLAINT**

purchased leads from FFL that were marketed as "instant," "fresh," "never been used," "exclusive," "new" and/or "newly generated."

47.     Excluded from the Classes is Defendant, its affiliates, employees, officers, and directors, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the class definition if discovery and/or further investigation reveals that the Classes should be expanded or otherwise modified.

48.     **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown to Plaintiffs, Plaintiffs are informed and believe that more than 55,000 Agents have enrolled with FFL.

49.     **Typicality:** Plaintiffs' claims are typical of the Class because Plaintiffs and all the Class members sustained damage which arose out of Defendant's wrongful conduct complained of herein. Plaintiffs and the Class members were injured in the same manner by Defendant's uniform course of conduct alleged herein. Plaintiffs and all Class members have the same claims against Defendant relating to the conduct alleged herein, and the events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class members. Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct.

50.     **Adequacy**: Plaintiffs are representatives who will fully and adequately protect the interests of the Class members. Plaintiffs have retained counsel who are experienced and competent in both Class Action and IMO litigation.

51.     **Superiority:** A Class Action would be superior to all other available methods for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and

**THIRD AMENDED COMPLAINT**

expense of individual adjudication of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually seek effective redress for the wrongs done to them by Defendant. Even if the Class members could afford such individual litigation, the court system could not. Individualized litigation presents the potential for inconsistent or contradictory judgements, and increases the delay and expense to all parties and to the court system, as presented by the complete factual and legal issues of this case. By contrast, the Class Action device presents far fewer management difficulties, and provides the benefits of a single adjudication, an economy of scale, and comprehensive supervision by a single court. On information and belief, members of the Class can be readily identified and notified. Plaintiffs are not aware of any difficulty that would be encountered in the management of this action so as to preclude its maintenance as a Class Action.

52. **Existence/Predominance of Common Questions of Fact and Law:**

Questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members in that Defendant has acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

a. Whether the leads sold by FFL were not of the quality represented, and, if not, whether recession or restitution should be afforded to the Agents who purchased such leads.

## COUNT 1

## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17500

### (By Fazah and all California Class Members against Defendant)

53. Fazah and all California Class Members incorporate all preceding paragraphs as though fully set forth herein.

54. According to California's False Advertising Law, set forth in Cal. Bus. &

**THIRD AMENDED COMPLAINT**

Prof. Code §17500, "[it] is unlawful for any person, firm, corporation, or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine."

55.    FFL has violated and continues to violate Section 17500 by falsely representing, inter alia, that its leads are "exclusive," "instant," "newly generated," "fresh," and have "never been used," as set forth with specificity above.  These representations are untrue and misleading because the leads are actually recycled many times over and in some instances are not leads at all.

56.    FFL either knew or should have known that its representations are false. On information and belief, FFL agents had expressed concern regarding problems with the leads to FFL.

14

**THIRD AMENDED COMPLAINT**

57. FFL's actions have been ongoing and continue to occur to this day.

58. As a result of such representation, Fazah and all California Class Members have been, and continue to be harmed in an amount to be determined at trial.

## COUNT 2

## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200

### (By Fazah and all California Class Members against FFL)

59. Fazah and all California Class Members incorporate all preceding paragraphs as though fully set forth herein.

60. Pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, "unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500)…"

61. FFL's actions described above constitute a violation of Section 17200 because they were unlawful, fraudulent, and unfair. Specifically, the false representations were made to induce Plaintiffs into continuously spending money on worthless leads, under the guise that such purchases would lead to increased sales.

62. FFL's actions are unlawful because they violate Bus. & Prof. Code §17500 and Cal. Ins. Code §790.04(b).

63. FFL's actions in selling leads are fraudulent and unfair because the leads were represented to be of superior quality when in fact they were not.

64. FFL's actions have been ongoing and continue to occur to this day.

65. As a result of FFL's actions, Fazah and all California Class Members have been injured.

## COUNT 3

## VIOLATION OF CALIFORNIA PENAL CODE §496

### (By Fazah and all California Class Members against FFL)

15

---

**THIRD AMENDED COMPLAINT**

66.     Fazah and all California Class Members incorporate all preceding paragraphs as though fully set forth herein.

67.     According to California Penal Code §496(a), "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment…However, if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail nor exceeding one year, if such person has no prior convictions for an offense…"

68.     FFL misrepresented the quality of the leads to its agents in order to obtain a premium price. Therefore, FFL received property, (i.e., proceeds from the sale of leads), that was obtained through theft by fraud.

69.     As a result of Defendant's actions, Fazah and all California Class Members have been injured.

## COUNT 4

## VIOLATION OF TEXAS BUSINESS & COMMERCIAL CODE §17.46

### (By Vega and all Texas Class Members against FFL)

70.     Vega and all Texas Class Members incorporate all preceding paragraphs as though fully set forth herein.

71.     According to Texas Deceptive Trade Practices Act, Texas Bus. & Com. Code §17.46, "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful…" The terms "false, misleading, or deceptive acts or practices" includes, but is not limited to the following: "representing that goods or services have…characteristics…which they do not have…", "representing that goods are original or new if they are…reconditioned, reclaimed, used, or

16

**THIRD AMENDED COMPLAINT**

secondhand", "representing that goods or services are of a particular standard, quality, or grade…if they are of another," and "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

72.     FFL committed false, misleading, and deceptive acts by misrepresenting the quality of the leads to its Agents in order to obtain a premium price.

73.     As a result of FFL's actions, Vega and all Texas Class Members have been injured.

## COUNT 5
## VIOLATION OF FLORIDA STATUTE §501.204
### (By Borish and all Florida Class Members against FFL)

74.     Borish and all Florida Class Members incorporate all preceding paragraphs as though fully set forth herein.

75.     According to Florida Deceptive and Unfair Trade Practice Act, Florida Statute §501.204, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

76.     FFL committed unconscionable acts or practices, and unfair or deceptive acts or practices by misrepresenting the quality of the leads to its agents in order to obtain a premium price.

77.     As a result of FFL's actions, Borish and all Florida Class Members have been injured.

## COUNT 6
## VIOLATION OF FLORIDA STATUTE §817.06
### (By Borish and all Florida Class Members against FFL)

17

**THIRD AMENDED COMPLAINT**

78.   Borish and all Florida Class Members incorporate all preceding paragraphs as though fully set forth herein.

79.   According to Florida Statute §817.06(1), "[n]o person, persons, association, copartnership, or institution shall, with the intent to offer or sell or in anyway dispose of merchandise, securities, certificates, diplomas, documents, or other credentials purporting to reflect proficiency in any trade, skill, profession, credits for academic achievement, service or anything offered by such person, persons, association, copartnership, corporation, or institution directly or indirectly, to the public, for sale or distribution or issuance, or with intent to increase the consumption or use thereof, or with intent to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or any interest therein, or ownership thereof, knowingly or intentionally make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated or circulated or placed before the public in this state in a newspaper of other publication or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, or letter or in any other way, an advertisement of any sort regarding such certificate, diploma, document, credential, academic credits, merchandise, security, service or anything so offered to the public, which advertisement contains any assertion, representation or statement which is untrue, deceptive, or misleading."

80.   FFL violated Florida Statute §817.06(1) by misrepresenting the quality of the leads to its agents in order to obtain a premium price.

81.   As a result of FFL's actions, Borish and all Florida Class Members have been injured.

## COUNT 7
## BREACH OF WRITTEN CONTRACT
### (By Plaintiffs and all Class Members against FFL)

18

---

**THIRD AMENDED COMPLAINT**

82.    Plaintiffs and all Class Members incorporate all preceding paragraphs as though fully set forth herein.

83.    Plaintiffs and all Class Members entered into a written contract with FFL when they purchased leads on the CRM. On the CRM portal, FFL warrants and represents, in writing, that the leads are "new," and "instant" because (1) the leads are "exclusive," "fresh," "instant," "newly generated," and have "never been used," among other terms, and (2) that the leads consist of customers looking to purchase insurance.[3] Plaintiffs and all Class Members selected to purchase these leads as warranted and advertised by FFL in the CRM. In exchange for these promises, Plaintiffs and all Class Members paid a premium price for the leads.

84.    Plaintiffs and all Class Members performed under the contract by paying the sums mentioned above via the CRM online portal.

85.    FFL breached the agreement by providing Plaintiffs and all Class Members with leads that were recycled and used many times over. In fact, the leads were not leads at all. In some cases, the potential customer was not even looking for insurance, or the contact information included in the lead was invalid.

86.    FFL was not excused from performing under the contract.

87.    As a result of the breach, Plaintiffs and all Class Members were damaged. Plaintiffs and all Class members seek recission of the agreements they entered into and thus seek restitution of any payments made to FFL for the leads.

## **COUNT 8**
## **BREACH OF ORAL CONTRACT**
### **(By Plaintiffs and all Class Members against FFL)**

88.    Plaintiffs and all Class Members incorporate all preceding paragraphs as

---

[3] Plaintiffs do not have access to the CRM, and therefore allege the terms of the agreement based on memory. Access to the CRM will be obtained through discovery.

**THIRD AMENDED COMPLAINT**

though fully set forth herein.

89.     Plaintiffs and all Class Members entered into oral agreements with FFL relating to the purchase of leads. According to the terms of the oral agreement, FFL orally promised to provide leads that were described as "exclusive," "fresh," "instant," leads that were "newly generated" and have "never been used." In exchange, Plaintiffs and all Class Members agreed to pay a premium price for the leads.

90.     Plaintiffs and all Class Members performed under the contract by paying the sums mentioned above.

91.     FFL breached the agreement by providing Plaintiffs and all Class Members leads that were recycled and used many times over. In fact, the leads were not leads at all because in some cases, the potential customer was not even looking for insurance.

92.     FFL was not excused from performing under the contract.

93.     As a result of the breach, Plaintiffs and all Class Members were damaged. Plaintiffs and all Class Members seek recission of the agreements they entered into and thus seek restitution of any payments made to FFL for the leads.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Michael Borish, Kevin Vega and Ramon Fazah and all Class Members pray for judgment as follows:

a.     That the Court enter judgement against Defendant in favor of Plaintiffs and all Class Members in an amount to be determined at trial;

b.     That all maximum penalties and statutory fines be assessed against Defendant in accordance with Cal. Bus. Prof. Code §17200, 17500, Cal. Penal Code §496, Texas Bus. & Com. Code §17.46, and Florida Statutes §§501.204, 501.207, 501.2075, 817.561, and 817.06;

c.     That Fazah and all California Class Members be entitled to a recovery of attorney fees, costs, and treble damages pursuant to C.C.P. §1021.5 and Cal. Penal Code

**THIRD AMENDED COMPLAINT**

§ 496(c);

    d.      That Vega and all Texas Class Members be entitled to a recovery of attorney fees and costs pursuant to Texas Bus. & Com. Code §17.46(d);

    e.      That Borish and all Florida Class Members be entitled to a recover of attorney fees and costs pursuant to Florida Statute §501.2105;

    f.      For recession and restitution of any funds paid to FFL for the leads;

    g.      For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs Michael Borish, Kevin Vega and Ramon Fazah and all Class members demand a jury trial on all issues so triable.

Dated: May 4, 2023        **WELLMAN & WARREN LLP**

                        By:/s/Chris Wellman
                        Scott W. Wellman
                        Chris A. Wellman

                        Attorneys for Plaintiffs Michael Borish,
                        Kevin Vega, Ramon Fazah
                        (and all others similarly situated)

21

**THIRD AMENDED COMPLAINT**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of May, 2023, a true and correct copy of the forgoing document was filed with the Clerk of the Court using the CM/ECF system which automatically sent notification of such filing to all counsel and parties who have entered an appearance in this action and who are registered to receive electronic notice via the Court's CM/ECF system.


By:/s/Chris Wellman
Chris Wellman

22

**THIRD AMENDED COMPLAINT**